# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>ex rel. CORNELL MORGAN, )<br>    Petitioner, )<br>)<br>       v. )<br>)<br>NEDRA CHANDLER,[1] )<br>    Respondent. ) | 08 C 16 |

## MEMORANDUM AND ORDER

Petitioner Cornell Morgan, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Morgan's petition is denied.

**I.    Background**

Petitioner Cornell Morgan (prisoner #K75038) is currently incarcerated at the Dixon Correctional Center. Following a 2003 jury trial in the Circuit Court of Cook County, Morgan was convicted of attempted first-degree murder and aggravated battery with a firearm and sentenced to twenty-two years' imprisonment. Morgan appealed his conviction and sentence to the Appellate Court of Illinois, arguing that: (1) the trial court improperly failed to conduct a fitness hearing before trial; (2) his trial attorney's failure to request a fitness hearing constitutes ineffective assistance of counsel; (3) he was denied his right to a fair and impartial jury when the court failed to question jurors who might have overheard discussions about the case; (4) he was denied effective assistance of counsel when his trial attorney allowed two allegedly biased jurors

---

[1] Morgan's petition named Joseph Loftus, the warden of the Danville Correctional Center, as the respondent. Morgan is currently incarcerated at the Dixon Correctional Center, where Nedra Chandler is the warden. Accordingly, Nedra Chandler is hereby substituted as the respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

to remain on the jury; and (5) he was not proven guilty beyond a reasonable doubt. *See People v. Morgan*, No. 1-05-0924 (1st Dist. Dec. 21, 2006) (unpublished order). On December 21, 2006, the state appellate court affirmed Morgan's conviction and sentence. *See id*.

Morgan filed a petition for leave to appeal ("PLA") with the Supreme Court of Illinois raising two issues relating to his fitness to be tried. Specifically, Morgan argued that: (1) he was denied due process when the trial court failed to conduct a full fitness hearing given his history of mental illness and the fact that his medication was changed shortly before his trial began; and (2) the trial court erred in finding that he was fit for trial based on a doctor's report prepared six months prior to trial that did not address his current mental condition. On March 28, 2007, the state supreme court denied Morgan's PLA. *People v. Morgan*, 223 Ill.2d 664 (2007).

Morgan did not file a petition for post-conviction relief pursuant to 725 ILCS 5/122-1, *et seq*. Instead, on November 2, 2007, he filed a federal petition for writ of habeas corpus raising two issues. First, Morgan asserts that he was denied his constitutional right to a meaningful hearing to determine his fitness for trial because "[t]he 'hearing' that was conducted on March 11, 2003, relied on stale information, failed to consider [his] rapidly deteriorating psychiatric condition, failed to account for his current suicidal and homicidal thoughts, and failed to evaluate the consequences of the change of his psychotropic medications." Petition at ¶ 34. Second, Morgan argues that his trial counsel was ineffective because he "had a constitutional duty to conduct some investigation of [his] fitness as of March 11, 2003, given the evolving circumstances and the well-documented history of longstanding psychiatric problems" but "[w]ithout conducting any investigation, defense counsel stipulated to outdated information and offered an opinion as to [his] current fitness." *Id*. at ¶ 35.

## II. Discussion

### A. Ineffective Assistance of Counsel

Morgan raised his ineffective assistance of counsel claim before the Illinois Appellate Court as part of his direct appeal. However, he did not include this issue in his PLA. He also did not file a petition requesting state post-conviction relief, and hence did not present the issue in any state collateral proceedings.

The respondents contend that Morgan's failure to raise his ineffective assistance of counsel claim through one complete round of state review means that it is procedurally defaulted. Morgan acknowledges that he did not present his ineffective assistance claim to the Illinois Supreme Court. Nevertheless, he contends that no evidence shows that he was mentally fit enough to decide what issues to include in his PLA, so his procedural default should be excused.

It is well established that a petitioner must present his claims to the Illinois courts, up to and including the Illinois Supreme Court, to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). This means that claims presented to a federal court must first appear not only in the petitioner's PLA but also in his filings with the state trial court and intermediate appellate court. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means that it is procedurally barred); *Boerckel*, 526 U.S. at 844 (failure to present claim to state's highest court means that it is procedurally barred); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) ("In Illinois, . . . a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court"); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction

proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory").

Morgan's ineffective assistance claim is defaulted because it did not appear in his PLA. Morgan does not attempt to show that either of the two exceptions to procedural default (cause and prejudice and a fundamental miscarriage of justice, both of which are discussed below) excuse his default. Instead, he contends that his mental condition means that he should be exempt from the normal exhaustion and procedural default rules. *See* Response at 12 ("But what sense does it make to require exhaustion and impose a procedural default on a person who is unfit? Petitioner's unfitness prevented him from making decisions necessary to protect and preserve his rights").

In support, Morgan directs the court's attention to *Pate v. Robinson*, 383 U.S. 375, 384 (1966). In *Pate*, the Supreme Court held that an incompetent defendant cannot "knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id*. According to Morgan, his mental illness prevented him from understanding or approving the decisions made by the attorney who represented him in connection with his PLA, so the *Pate* decision means that he cannot be held responsible for that attorney's decision to omit Morgan's ineffective assistance of trial counsel argument from his PLA.

Morgan's argument that mental illness exempts him from the normal procedural default rules is flatly incorrect. First, *Pate* stands for the proposition that the due process clause prohibits states from trying and convicting mentally incompetent defendants. *See id*. at 384-86. The decision does not address the procedural default issue presently before the court. Second, an argument that mental illness excuses a procedural default is in fact an effort to establish the "cause" prong of the cause and prejudice exception to procedural default. *See Harris v.*

*McAdory*, 334 F.3d 665, 669 (7th Cir. 2003). It thus is not a means by which a petitioner can wholly absolve himself from the need to comply with state procedural rules to avoid procedural default.

The court thus rejects Morgan's claim that his mental illness means he is not subject to procedural default rules. Because he procedurally defaulted his ineffective assistance claim by failing to include that claim in his PLA, the court may reach the merits of that claim only if Morgan can establish both cause for his failure to follow a rule of state procedure and actual prejudice, or show that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999).

Unfortunately for Morgan, the Seventh Circuit has held that mental illness does not constitute cause for default because it is not an external impediment. *Harris v. McAdory*, 334 F.3d at 669 (collecting cases); *see also Dowery v. Wilson*, No. 3:06-CV-492 PS, 2007 WL 951930, at *1-2 (N.D. Ind. Mar. 28, 2007) (rejecting petitioner's attempt to use his "mental problems and conditions" to establish cause); *Smith v. Wilson*, No. 3:07-CV-152 RM, 2007 WL 1308836, at *1 (N.D. Ind. May 3, 2007) ("mental illness is not cause"). Morgan has not attempted to distinguish this precedent and, indeed, does not address it at all in his response.

In the interests of completeness, the court also notes that Morgan's argument about his mental capacity at the time he filed his PLA (as opposed to his mental condition years earlier when he was tried) is not supported by any specific evidence. Instead, Morgan's current counsel contends generally that Morgan was incompetent at the time of his trial and assumes, without discussion, that his condition remained static and was the same when he filed his PLA years

later. Based on the present record, the court would thus have to speculate as to whether Morgan was capable of participating in his defense in a meaningful way at the time he filed his PLA. Accordingly, even if the court could consider Morgan's mental health as of the time he filed his PLA for the purposes of establishing cause and prejudice, Morgan would still not be entitled to relief. *See id*. at 669-70. For all of these reasons, Morgan has not established cause that excuses his procedural default.

The court will thus consider whether the second exception to procedural default – the fundamental miscarriage of justice exception – helps Morgan. "[T]his relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id*. Morgan's petition, as well as the state court pleadings submitted to the court, do not contain any substantiated allegations of actual innocence. Thus, this exception does not apply.

In sum, Morgan procedurally defaulted his ineffective assistance claim, his alleged mental health issues do not exempt him from the procedural default rules, and no exception to procedural default applies. Thus, he is not entitled to relief under § 2254 with respect to his ineffective assistance claim.

### B. Morgan's Due Process Claims

#### 1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as

determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

### 2. Proceedings Before the Trial Court

Morgan contends that he was deprived of a meaningful fitness hearing before his trial in March of 2003 because the trial court erroneously relied on a fitness evaluation prepared six months earlier in September of 2002. *See People v. Morgan*, No. 1-05-0924 at 8-15. Morgan had pre-existing psychiatric problems and thus was on psychotropic medication for most of the time that he was in pretrial custody, from August of 2002 to March of 2003.

On February 6, 2003, five weeks before his trial commenced, he filed a detainee grievance. In the February 6th grievance, he stated that he believed that his medication

was not working, that he was depressed due to recent deaths in his family, that he could not sleep, and that he had suicidal and homicidal ideations.

On February 27, 2003, he submitted a second detainee grievance. In the February 27th grievance, Morgan asserted that his mental condition was continuing to deteriorate, that his medication was not working, that he could not sleep or eat, and that he was affected by another death in his family. In response to this grievance, Morgan was sent to the jail hospital on March 10, 2003 (the night before jury selection commenced) and his medication was changed. Later that day, he was sent to Cermak Hospital. He was admitted to the psychiatric ward, where hospital records indicate that he slept soundly throughout the night.

On March 11, 2003, Morgan was brought to court from the hospital. On that date, the court and all the lawyers were aware that Morgan had been brought to court from the hospital. In addition, Morgan told his attorney that his medication was changed the night before because his previous medication was not working. However, Morgan did not advise the trial court at that time that he had filed the two grievances. Instead, he told the trial court about the two grievances for the first time in post-trial motions. Thus, they were not before the court as of the time that Morgan's trial started.

Before jury selection began, the State and Morgan stipulated to a September 2002 report prepared by Dr. Roni Seltzberg. Based on a September 17, 2002 evaluation, Dr. Seltzberg stated that to a reasonable degree of medical and psychiatric certainty, Morgan was fit to stand trial. Dr. Seltzberg's report also noted that Morgan was prescribed antidepressant/psychotropic medication. She opined that these medications could provide subjective benefits, but that Morgan would likely be fit to stand trial without his medication. Dr. Seltzberg further concluded that there was no indication that the medications caused any clinically significant adverse effect

on Morgan's cognitive functioning, behavior, or fitness for trial. Finally, Dr. Seltzberg also found that Morgan was aware of the nature of the charges and proceedings against him and was capable of assisting in his defense.

With respect to Dr. Seltzberg's testimony, the parties stipulated that she would testify that there was no bona fide doubt that Morgan could participate in the proceedings against him. The trial court then inquired about defense counsel's interaction with Morgan. Defense counsel stated:

> I spoke [to] him several times, either here or at 26th and California. He's also [written] me extensive notes about his case summarizing reports and even assisting me in questions he wanted answered and asked even at the trial. So he was able to assist me very well, your Honor.

*Id*. at 9.

Next, the following dialogue occurred:

| | |
|---|---|
| THE COURT: | Mr. Cornell Morgan, were you administered your medications today by the Cook County jail? |
| DEFENDANT: | Yes, ma'am. |
| THE COURT: | Okay. |
| DEFENSE COUNSEL: | I believe he's been taking that medicine regularly also, judge. |
| THE COURT: | Is that correct? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay. Counsel, as you speak with your client today you feel he is able to assist you and there is no doubt that he is able to participate in the trial and assist you throughout the trial? |
| DEFENSE COUNSEL: | Absolutely, Judge. |

*Id*. at 10.

Based on the stipulations and defense counsel's representations, the trial court found that petitioner was fit to stand trial and adopted Dr. Seltzberg's report.

In Morgan's motion for a new trial and his supplemental motion for a new trial, he brought his two detainee grievances to the court's attention for the first time. The court considered the grievances and Morgan's medical records, and noted that Morgan had cooperated with his lawyer and behaved appropriately during trial, stating:

> As far as whether or not the defendant was resting or not, the defendant's witness said that he had insomnia. When he was observed by medical personnel in the hospital, he was sleeping comfortably throughout the evening, so medical personnel are watching him the night before the trial and they state in the medical record that he is sleepin
>
> . . . .
>
> This Court was able to observe the defendant throughout the entire trial. The defendant does not have to throw chairs or act wildly to be unfit. There are also many other things hopefully that a Judge can observe to see whether or not a defendant is able to cooperate with his attorney, whether he is involved. I will state, in fact, that I saw Cornell Morgan being actively involved just as he is with you as he is talking to you while you're doing your motion and answering questions and giving you responses to things either that I have said or the State said. I see him today whispering things to you in his defense. I also saw him totally cooperating with this lawyer, being very involved during the trial and talking to the lawyer making comments while witnesses were testifying, making comments while I said something which he is supposed to do. He was involved with his attorney throughout the entire trial that I observed and not in an incoherent manner. Appropriate things were said, and it brought back a memory to mind, he said something to the lawyer commenting on the witnesses testifying or adding information through the trial. He acted very appropriately throughout the entire trial and worked with his lawyer and conversed with his lawyer throughout the entire trial.
>
> . . . .
>
> I believe that the stipulation that the attorneys agreed to is binding. I believe that there was nothing that was presented to show anything other than the defendant was fit at the time of trial, that he was observed by medical personnel, that he was well-rested and had a good night sleep before his trial. I saw nothing to the contrary.

*See id*. at 10-11; Vol. 4, R. 667-68.

Accordingly, after considering the grievances and Morgan's mental health records, the trial court denied petitioner's motion for a new trial and supplemental motion for a new trial, and again held that Morgan had been fit to stand trial. R.667-68; S.R.183-88.

### 3. The State Court's Rulings

The Illinois Appellate Court rejected Morgan's challenges to the trial court's ruling regarding his fitness for trial, finding that there was no bona fide doubt "as to his ability to understand the nature and purpose of the proceedings and to assist in his defense." *People v. Morgan*, No. 1-05-0924 at 13. It also rejected his contention that his trial counsel was ineffective based on counsel's failure to request a formal fitness hearing because unfitness is not presumed automatically where a defendant is taking psychotropic medication and, in any event, no prejudice existed because Morgan did not establish that there was a reasonable probability that he would have been found unfit if he had received a fitness hearing. *Id*. at 14-15.

As noted above, Morgan's PLA raised two issues relating to his fitness to be tried: (1) Morgan was denied due process when the trial court failed to conduct a full fitness hearing given his history of mental illness and the fact that his medication was changed shortly before his trial began; and (2) the trial court erred in finding that Morgan was fit for trial based on Dr. Seltzberg's report, which was prepared six months prior to trial and did not address his current mental condition.

### 4. Morgan's Federal Claims

The due process claims raised in Morgan's § 2254 petition track the due process claims in his PLA: Morgan contends that he was denied his constitutional right to a meaningful hearing

- 11 -

regarding his fitness for trial because the trial court improperly relied on Dr. Seltzberg's September 2002 evaluation, "failed to consider [his] rapidly deteriorating psychiatric condition, failed to account for his current suicidal and homicidal thoughts, and failed to evaluate the consequences of the change of his psychotropic medications." Petition at ¶ 34.

The Supreme Court has held that "the due process clause requires the trial judge to inquire sua sponte into a defendant's mental state, if events in court imply that the accused may be unable to appreciate the nature of the charges or assist his counsel in presenting a defense." *Timberlake v. Davis*, 409 F.3d 819, 822 (7th Cir. 2005), *citing Drope v. Missouri*, 420 U.S. 162 (1975) ("a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"); *Pate v. Robinson*, 383 U.S. at 385-86 (under Illinois law, if the evidence raises a "bona fide doubt" regarding competence, the defendant is entitled to a hearing); *see also* 725 ILCS § 5/104-11(a) (a defendant is entitled to a competency hearing if "a bona fide doubt of the defendant's fitness is raised").

A defendant, however, is entitled to a formal hearing under the due process clause only if there is "substantial reason to doubt [his] fitness." *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). "The inquiry is highly individualized." *Id*. Thus, "[t]here are . . . no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. Relevant factors include any evidence of irrational behavior, the defendant's demeanor in court, and any medical opinions on the defendant's competency to stand trial." *Id*., *quoting Drope v. Missouri*, 420 U.S. at 180. Ultimately, a defendant is fit to stand trial if he has "sufficient present ability to consult with his lawyer within a reasonable degree of

rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993), *quoting Dusky v. United States*, 362 U.S. 402, (1960) (per curiam).

Here, the Illinois Appellate Court affirmed the trial court's pre-trial and post-trial findings that there was no bona fide doubt as to Morgan's fitness to stand trial, and that Morgan was in fact fit. In reaching these conclusions, the trial court considered: (1) Dr. Seltzberg's December 2002 report; (2) the lack of any presumption that a psychiatric condition or change in psychotropic medications entitles a defendant to a formal fitness hearing; (3) hospital records indicating that Morgan "slept soundly" the night before trial commenced; (4) the parties' stipulation as to what Dr. Selzberg's testimony would be; (5) statements made by defense counsel about Morgan's mental condition in response to questions by the court. *See People v. Morgan*, No. 1-05-0924 at 6-10.

After trial, the court considered Morgan's detainee grievances and medical records. It also relied on its observations of Morgan during trial, including his active involvement with his attorney, his interactions with counsel based on statements made by the court and the prosecution, and his comments about decisions during trial, including jury selection, a bench versus a jury trial, and the effect that seeing his tattoos might have on the jury. *Id*. at 10-11.

Morgan contends that the trial court's findings that he was fit to stand trial were improper because the state court did not expressly rely on federal law when ruling against him on the fitness issue. However, where the state appellate court ruled on the merits of an argument raised by a petitioner but does not discuss the claim with reference to federal law, it is irrelevant if the standard the state court applied is as demanding as the federal standard. *Oswald v. Betrand*, 374

F.3d 475, 477 (7th Cir. 2004), *citing Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam); *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

Morgan also argues that the denial of a formal fitness hearing violated his due process rights because he had a history of mental illness prior to trial, his counsel and the court were concerned about his fitness, Dr. Seltzberg's report was not contemporaneous with his trial, his condition deteriorated prior to trial due to depression caused by deaths in his family, and his medication changed the day before trial. These arguments, in essence, reflect present counsel's disagreement with the state court's findings regarding Morgan's fitness.

In *Sturgeon v. Chandler*, the Seventh Circuit rejected a very similar argument. 552 F.3d at 612-13. In that case, the Seventh Circuit affirmed the denial of relief under § 2254, noting that:

> [t]he Illinois Appellate Court traced, in considerable detail, [the petitioner's] documented history of mental illness, his receipt of psychotropic medications, his occasional erratic in-court behavior (noted above), and the results of the court-ordered competency evaluations. Ultimately, the court relied on the unanimity among the medical experts in concluding that [the petitioner] had not demonstrated a bona fide doubt as to his competency. On this record, this conclusion is unassailable. [The petitioner] hasn't presented clear and convincing evidence to contradict the doctors' conclusions. The state court's reliance on the medical opinions . . . was well within the bounds of permissible differences of opinion. Accordingly, the state court's decision was neither an unreasonable determination of the facts nor an unreasonable application of the "bona fide" or "substantial reason to" doubt standard.

*Id.* at 613.

The critical question, therefore, is not whether Morgan's current counsel agrees with the state court's decision. Instead, the issue before the court is whether the state court's decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. at

404-05. The state court's decision here easily meets this standard because the state court assessed Morgan's due process claim using the proper standard. Moreover, its application of that standard was "well within the bounds of permissible differences of opinion" given that Morgan's trial counsel repeatedly expressed his belief that Morgan was fit to stand trial, the medical and other evidence supported this conclusion, the trial court made detailed and specific factual findings about Morgan's actions during trial, and Morgan did not develop a record showing that his trial counsel rendered constitutionally ineffective assistance. *See Sturgeon v. Chandler*, 552 F.3d at 613.

Morgan's citation to *Burt v. Uchtman*, 422 F.3d 557 (7th Cir. 2005), does not alter this conclusion. The *Burt* decision is factually distinguishable for numerous reasons. In that case, the defendant had mental health problems and brain damage. He was represented by attorneys who unsuccessfully sought to withdraw due to their lack of experience with capital cases, the defendant's medical records contained inconsistent notations regarding his medications, the doctor's reports indicated that the defendant was suffering from hallucinations, the psychologist who opined that the defendant was fit for trial did not review his records reflecting the many changes in his medication, the defense sought a continuance because the defendant could not stay awake during trial, and the defendant suddenly decided to plead guilty in a death penalty case, against advice of counsel and with no concessions from the state, apparently due to his desire to return to prison where he could smoke. *Id*. at 558-63.

The Seventh Circuit noted that its disagreements with the state court's findings would not justify granting habeas relief because those findings are entitled to great deference. *Burt v. Uchtman*, 422 F.3d at 565. It then found that "no medical expert [had] ever opined on [the

defendant's] fitness to stand trial while he was heavily medicated" and that given the defendant's mental condition and actions before and during trial:

> no level of deference permits us to overlook the most critical shortcoming of the Illinois Supreme Court's opinion – its total failure to address whether [the defendant] was entitled to a competency hearing before pleading guilty given the heavy and ever-changing doses of psychotropic medication he was taking.

Id. at 565-66. The Seventh Circuit also criticized the trial court's perfunctory response to the defendant's decision to plead guilty in the middle of trial, and its unquestioning acceptance of facially flawed medical opinions. *Id*. at 566.

In the instant case, however, Morgan has failed to point to evidence that indicates that the state court's decision was an unreasonable application of Supreme Court due process precedent. It is true that Morgan has mental health issues and was taking psychotropic medication during his trial. However, this is not enough, in and of itself, to entitle Morgan to a full competency hearing. This is especially true given that the state court carefully considered the competency issue before and after Morgan's trial and the record supported the state court's findings, including its conclusion that Morgan was able to work with his attorney and understand the proceedings against him. *See Godinez v. Moran*, 509 U.S. at 396. The court thus finds that Morgan is not entitled to relief under § 2254.

### III.  Conclusion

For the above reasons, Morgan's § 2254 petition [#1] is denied. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

DATE:  March 12, 2009

                                                  Blanche M. Manning